UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOEL TRACY,

                Plaintiff,                        CIVIL ACTION NO.  04 CV 73043 DT

          v.                            DISTRICT JUDGE NANCY G. EDMUNDS

PHARMACIA & UPJOHN ABSENCE       MAGISTRATE JUDGE VIRGINIA M. MORGAN
PAYMENT PLAN, ET AL.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.      Introduction**

This matter comes before the court on the parties' cross-motions for the court to reverse or affirm the Administrator's decision.  Jurisdiction is based on the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1132(a)(1)(B).  Plaintiff moves the court to reverse the Administrator's decision discontinuing his long term disability ("LTD") benefits under Pharmacia and Upjohn Absence Payment Plan ("Plan").  Defendant moves the court to affirm the Administrator's decision.  For the reasons stated herein, the court recommends that defendant's motion be **GRANTED** and plaintiff's motion be **DENIED**.

**II.     Background**

In this case, plaintiff was hired by Pharmacia & Upjohn (now Pfizer) as a planning manager on April 23, 1989.  (AR 25, JT 37)  Plaintiff stopped working on January 1, 1997, due

- 1 -

to Idiopathic Hypersomnia and Major Depression.  (AR 29, JT 42)  For the period of January 1,

1997 through to December 31, 1999, plaintiff was eligible for the initial LTD benefits under the

Plan.  (Plan Schedule 1, AR 13, JT 16-18)  To receive these benefits, plaintiff was required to

demonstrate, which he did, that he was unable to perform his customary work at Pharmacia &

Upjohn (i.e., that he was "temporarily unable to be gainfully employed at Upjohn or anywhere,

or permanently unable to be gainfully employed at Upjohn" ).  (AR 70, JT 222)  Upon expiration

of the initial LTD benefits, plaintiff was denied further continuation of the benefits.  (AR 29, JT

41-42)  To be eligible for continued LTD benefits after the initial period, an employee must

demonstrate that he/she is "unable to be gainfully employed anywhere."  (Plan Schedule 3, AR

70, JT 223)  The Administrative Committee of the Plan held that plaintiff failed to satisfy this

definition.  (AR 29, JT 41-42)

Continuation of plaintiff's LTD benefits was first denied by Prudential Insurance

Company, a disability case manager at the time, in a letter dated January 11, 2000.  (AR 29, JT

41-42)  Plaintiff appealed the decision to the Administrative Committee on February 25, 2000.

(AR 34, JT 49-50)  The Administrative Committee affirmed Prudential's decision in a letter

dated March 10, 2003, finding that plaintiff' did not meet the definition for continued LTD

benefits.  (AR 64, JT 195-196)

### III.    Analysis

#### A.  Standard of Review

In an action to assess disability benefits under ERISA, courts must first decide which of

ERISA's two standards of review applies, *de novo* or "arbitrary and capricious."  *Firestone Tire*

& *Rubber Co. v. Bruch*, 487 U.S. 101, 115 (1989).  Then, the courts must make a decision based

solely upon the administrative record and, accordingly, render findings of fact and conclusions

of law.  *Wilkins v. Baptist Health Care System, Inc*.  150 F.3d 609 (6th Cir. 1998).

In *Firestone Tire & Rubber Co. v. Bruch,* 487 U.S. 101, 115 (1989), the Supreme Court

held that under ERISA law, federal courts review a plan administrator's denial of benefits *de*

*novo*, unless the plan grants the plan administrator discretionary authority to determine eligibility

for benefits, in which case the arbitrary and capricious standard applies.  "When conducting a *de*

*novo* review, the district court must take a 'fresh look' at the administrative record but may not

consider new evidence or look beyond the record that was before the plan administrator."

*Wilkins*, 150 F.3d at 616.  Under the arbitrary and capricious standard, the administrator's

decision is to be upheld if that determination is "rational in light of the plan's provisions."

*University Hospitals v. Emerson Electric*., 702 F.3d 839 (6th Cir. 2000); *Hamilton v. Pharmacia*

*& Upjohn Co*., 51 F. Supp. 2d. 834, 837 (W.D. Mich. 1999).  "When it is possible to offer a

reasoned explanation, based on the evidence, for a particular outcome, that outcome is not

arbitrary or capricious."  *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693

(5th Cir. 1989).

In the present case, the court has the authority to apply the arbitrary and capricious

standard because the Administrative Committee, an authorized body, ultimately made the final

determination, denying plaintiff's LTD benefits.  Nevertheless, the court has some concerns

about the process because the Administrative Committee took more than two and a half years to

decide after LTD benefits were stopped based on Prudential Insurance Co.'s evaluation.  In

- 3 -

addition, in an earlier case, Pharmacia & Upjohn argued that a *de novo* standard should be applied.  See *Hamilton v. Pharmacia & Upjohn Co*., 51 F. Supp. 2d. at 837.  Thus, in an exercise of caution, the court will evaluate the decision under the less deferential *de novo* standard.

### B.  Findings of Fact

1.  The record establishes that plaintiff suffers from idiopathic hypersomnolence (a need for excessive sleep without a known cause), a diagnosis which prevented plaintiff from working at his management position at Pharmacia & Upjohn.  As a result, plaintiff received disability benefits for an initial period of three years.  After that period, he was denied further benefits due to the change in standard to be applied.

2.  No treating physician has found that plaintiff is completely unable to work.

3.  Dr. Richard Munson, indicated in a report dated January 22, 1999, that plaintiff was able to work with certain limitations.  Dr. Munson stated "[i]n order to improve [Plaintiff's] daytime functioning, and prevent possible injury due to falling asleep while driving, he should maintain a regular work-sleep schedule.  This should include a consistent starting and ending time to his workday, as well as a normal eight-hour shift without overtime."  (AR 18, JT 26)  Such an eight-hour shift would clearly allow for gainful employment.

4.  In December, 1999, plaintiff himself stated that although he was unable to consistently work eight hours a day, he can be productive.  (AR 22, JT 30)  He further stated that he could work with reasonable and flexible hours including at least one hour around lunchtime to sleep or rest and time off when his conditions got worse, which occurred several times a year.  *Id*.

- 4 -

5.  On February 3, 2000, plaintiff told a Vocational Rehabilitation Consultant (VRC) that he was working on stock market investments at home for eight hours a day ever since he was terminated from his last job in April, 1999.  He stated that he felt confident that, with additional skills in day/swing trading, "he would be able to make as much or more than he was at Pharmacia."  (AR 59, JT 183)

6.  Plaintiff also indicated in a rehabilitation assessment questionnaire provided by a VRC that he could work 40 hours per week if he was able to work at home, have flexible hours, and have secretarial/technical support.  *Id.*

7.  In a letter dated February 14, 2000, Ms. Barbara K. Lemke, a Prudential vocational consultant, stated that "by conducting a thorough job search and exploring consulting opportunities, [plaintiff] will have an excellent chance of continuing a career in the field of market research."  (AR 32, JT 47)  She further stated that by using his "current skills, abilities and education" in the field of market research, plaintiff is employable without further retraining.  *Id.*

8.  On April 4, 2000, the Social Security Administration (SSA) medical consultant, when making a decision on plaintiff's disability claim, found that plaintiff had no exertional, postural, manipulative, visual, or communicative limitations.  (AR 39, JT 70-73)  Plaintiff was limited to avoiding exposure to hazards such as machinery or heights.  (AR 39, JT 73)  Plaintiff's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" was only "moderately limited" along with his "ability to complete a normal workday and workweek without interruptions…and to perform

- 5 -

at a consistent pace without an unreasonable number and length of rest periods."  (AR 40, JT

77-78)

9.  In addition, plaintiff took medication which reduced the effects of sleepiness, lived

independently, drove a car and a motorcycle, shopped, and performed a full range of

household chores.  (AR 40, JT 79)  Moreover, the SSA consultant concluded that plaintiff

"should be capable of performing simple, repetitive routine tasks at any level which do not

require him to be at exposed heights or to operate hazardous machines or motor vehicles."

*Id*.

10. In November, 2001, Dr. Bahri Grungor concluded that plaintiff could work for a maximum

of four hours per day.  (AR 47, JT 99)  He further concluded that plaintiff has to take two

naps a day, one-hour nap in the morning and a two-hour nap in the afternoon.  (AR 44, JT

92)  It is important to note that Dr. Grungor's report is not supported by medical evidence.

### C. Conclusions of Law

1.  Plaintiff argues that the Administrative Committee's decision is incorrect because it did not

take into account the Social Security Administration (SSA) determination that plaintiff is

disabled and is entitled to a period of disability and disability insurance benefits under

sections 216(I) and 223 of the Social Security Act.  (AR 53, JT 118-123)  However, the SSA

analysis took into account factors such as plaintiff's age, education, work experience, and

availability of jobs for the plaintiff.  This standard differs greatly from the standard plaintiff

has to meet under the Plan where no such factors are taken into consideration.  Furthermore,

in the SSA analysis, the burden of proof shifted to the Commissioner of Social Security.

Since the SSA determined that the Commissioner could not meet its burden, benefits were awarded to plaintiff.  Under the instant disability policy, there is no burden shifting requirement.  The burden always remains on plaintiff to prove that he was "unable to be gainfully employed anywhere."  The court finds that he has not met this burden.

2.  Having reviewed the administrative record *de novo*, the court agrees with the Administrative Committee's conclusion that plaintiff did not meet the Plan's Schedule 3 definition for long-term disability (i.e., that he was "unable to be gainfully employed anywhere").

3.  While the exact language of this Plan has not been construed by a court, numerous cases have construed similar language and provided guidance.  According to the Court in *Helms v. Monsanto Co*., 728 F. 2d 1416, 1421 (11th Cir. 1986), "gainful activity [or employment] means performance of substantial services with reasonable regularity, either in competitive or self-employment."  To bar recovery of disability benefits "the earnings possible must approach the dignity of a livelihood."  *Id*.  Thus, under this standard, plaintiff must "show physical inability to follow any occupation from which he could earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability."  *Id*. at 141-22.  In the present case, plaintiff has failed to satisfy this standard.  The medical evidence and plaintiff's own description of limitations demonstrate that plaintiff is able to perform substantial services which would generate financial compensation and to perform this activity with reasonable regularity.  Thus, he is rendered ineligible for continued LTD benefits.

- 7 -

4.  While the evidence in the administrative record differed somewhat as to the extent plaintiff's condition prevented him from working, no evidence suggests that he is unable to "be gainfully employed anywhere." Consequently, the court finds that plaintiff's impairment does not prevent him from being "gainfully employed anywhere."

### IV. Conclusion

For the reasons stated above, the court recommends that plaintiff's motion to reverse the Administrator's decision be **DENIED** and defendant's motion to affirm the Administrator's decision be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F. 2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F. 2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F. 2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


                   s/Virginia M. Morgan            
                VIRGINIA M. MORGAN
                UNITED STATES MAGISTRATE JUDGE

Dated:   June 6, 2005

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record herein by electronic means or U.S. Mail on June 6, 2005.

                 s/Jennifer Hernandez
                 Case Manager to
                 Magistrate Judge Morgan